UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RONALD A. BENOIT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:17 CV 2376 ACL |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Deputy Commissioner of Operations, ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM**

Plaintiff Ronald A. Benoit brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Benoit's severe impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform past relevant work.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

### **I. Procedural History**

Benoit filed his application for DIB on February 25, 2014, claiming that he became unable to work on December 11, 2013, because of arthritis; chronic pain in his hands, feet, back, hips, and knees; COPD; and Hepatitis C. (Tr. 180-93, 216.) Benoit was 61 years of age at the time of his

alleged onset of disability. His claims were denied initially. (Tr. 90-96.) Following an administrative hearing, Benoit's claims were denied in a written opinion by an ALJ, dated September 6, 2016. (Tr. 21-32.) Benoit then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on July 10, 2017. (Tr. 4-6.) The Appeals Council denied Benoit's request for reopening on September 29, 2017. (Tr. 2-3.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

Benoit's sole claim in this action is that the ALJ "improperly determined that Mr. Benoit's essential tremors were not a severe impairment." (Doc. 15 at p. 7.)

## II. The ALJ's Determination

The ALJ first found that Benoit meets the insured status requirements of the Social Security Act through December 31, 2018. (Tr. 23.) He further found that Benoit has not engaged in substantial gainful activity since December 11, 2013, the alleged onset date. *Id.* In addition, the ALJ concluded that Benoit had the following severe impairments: hereditary and idiopathic neuropathy, unspecified; lesion of planta nerve; and chronic obstructive pulmonary disease ("COPD"). *Id.* The ALJ found that Benoit did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. *Id.*

As to Benoit's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant could use his lower extremities to operate foot controls on no more than an occasional basis. The claimant could climb ramps and stairs occasionally, but could never climb ladders and scaffolds. The claimant could stand and/or walk for a cumulative total of six hours during an eight-hour workday, and could sit for eight hours

> during an eight-hour workday; provided, however the claimant
> would need the opportunity to make a positional change every 60
> minutes. The claimant could stoop, kneel, and crouch on an
> occasional basis, but could never crawl. The claimant could use his
> bilateral upper extremities to reach, handle, finger, and feel on a
> frequent, but not a constant basis. The claimant could not work in
> environments that would result in concentrated exposure to
> respiratory irritants, vibration, or extreme cold, and could never
> work at unprotected heights.

(Tr. 27.)

The ALJ found that Benoit was capable of performing past relevant work as a sales manager, and as an automobile salesperson. (Tr. 32.) The ALJ therefore concluded that Benoit was not under a disability, as defined in the Social Security Act, from December 11, 2013, through the date of the decision. *Id.*

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability
> insurance benefits filed on February 25, 2014, the claimant is not
> disabled under sections 216(i) and 223(d) of the Social Security Act.

*Id.*

### III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the

Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an

opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country."  42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."  *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."

*Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks

omitted); *see* 20 C.F.R. § 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. § 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id.*   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or his age, education, and work experience.   *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000).   The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. §416.920(a)(4)(v).   At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.   *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## IV. Discussion

Benoit argues that the ALJ failed to find Benoit's essential tremors were a severe impairment at step two of the sequential evaluation. Defendant contends that the ALJ properly evaluated Benoit's essential tremors.

The claimant bears the burden of proving the severity of an impairment or combination of impairments. *Kirby v. Astrue,* 500 F.3d 705, 707 (8th Cir. 2007). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id.*; *see also* 20 C.F.R §§ 404.1520(c), 416.920(c). Being able to do basic work activities means having the abilities and aptitudes necessary to do most jobs, including physical functions; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b); 416.921(b). Although severity is not an onerous requirement to meet, it is also "not a toothless standard." *Kirby*, 500 F.3d at 708. A diagnosis of a given impairment does not, on its own, indicate that the impairment is severe. *Buckner v. Astrue*, 646 F.3d 549, 557 (8th Cir. 2011) ("[A]lthough [Plaintiff] was diagnosed with depression and anxiety, substantial evidence on the record supports the ALJ's finding that his depression and anxiety was not severe.").

The ALJ discussed Benoit's allegation of essential tremors as follows at step two:

> The claimant relates a history of tremor, and 'essential tremor' of the upper extremities was reported by Dr. Myers. However, this symptom was first reported during an interview for the purpose of 'discuss[ing] disability paperwork' on August 18, 2015 (Exhibit 12F/3), well after the date the claimant alleged he first became disabled. No tremor was observed by any other physician. Stephen Williamson, M.D. examined the claimant at the request of the Social Security Administration on June 7, 2014 and found no tremor (Exhibit 10F). VA primary care physician Jihad Yousef Ibrahim, M.D. examined the

claimant on November 20, 2015 and found neurological examination to be
completely normal, and the claimant made no complaint of neurological deficits
or paresthesia (Exhibit 13F/93). Accordingly, the Administrative Law Judge
concludes this alleged impairment is not 'medically determinable.'

(Tr. 26.)

As an initial matter, the undersigned notes that Benoit did not allege tremors as a condition limiting his ability to work in his application for benefits. (Tr. 216.) It is Benoit's burden to prove the existence of severe impairments. *See Kirby*, 500 F.3d at 707. Benoit's omission of this impairment in his application is significant. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) (observing that a failure to "allege depression in [an] application for disability benefits is significant, even if the evidence of depression was later developed").

The crux of Benoit's claim is that records submitted to the Appeals Council of neurologist Mignon M. Makos, M.D., demonstrate that Benoit's essential tremor was a severe medically determinable impairment. Benoit claims that he informed the ALJ at the hearing that he had seen a neurologist for complaints of worsening tremors. He states that the records of Dr. Makos were submitted to the Appeals Council. (Doc. 15 at 15.)

At the administrative hearing held on April 5, 2016, Benoit testified that he had seen a neurologist in Rolla, Missouri. (Tr. 48.) The ALJ responded as follows:

> ALJ: Counsel, do we have those records? I don't recall the neurologist records. That was one of the questions I had to ask.
>
> [Counsel]: I believe so. Let me see. What was the name again? I don't remember that.

*Id.* An exchange then occurred between the ALJ and counsel[1] regarding the name of the neurologist, and whether the neurologist's treatment notes were contained in the record. (Tr. 48-50.) The ALJ again noted that he did not see this evidence in the record, and counsel stated

---

[1]Benoit's counsel in the instant action also represented Benoit at the administrative hearing.

that she would "double check that." (Tr. 50.)

The ALJ proceeded to question Benoit regarding the treatment he had received for the tremors, and the symptoms he experienced from this alleged impairment. (Tr. 50-51.) Benoit testified that he had seen the neurologist on one occasion, and that she had prescribed medication. (Tr. 50-51.) He testified that the tremors had caused his handwriting to worsen, and that it occasionally caused him to drop or knock over items. *Id.* Benoit indicated that he had last spoken to the neurologist approximately six months prior to the hearing. (Tr. 51.)

Upon his counsel's questioning, Benoit testified that he experiences "good days and bad days" with the tremors. (Tr. 54.) He stated that, on a good day, he "just shake[s]." *Id.* On a bad day, which occurs three to four times a week, he does not "do much of anything at all" because he cannot hold any objects steady. (Tr. 55.)

At the conclusion of the hearing, the ALJ stated "[Counsel], what I would like you to do is obtain those neurologist records for me." (Tr. 69.) The ALJ explained to Benoit that "the difficulty we have here…is that Social Security regulations require us to have medical evidence in the form of findings, laboratory testing or diagnostic testing to support the determination that you have a particular impairment, and that it is at the degree of severity that supports an award of disability." (Tr. 69-70.) He remarked that there was not "anything here that documents that condition very well" other than a few notations of "essential tremor" written by Dr. Myers. (Tr. 70.) The ALJ continued:

> That's sort of a problem throughout some of the records. I see the diagnoses, and I see that you've received treatment, but in terms of muscle strength testing, the—and the various other things we look at, I feel like we need more, or I'd like to see everything we've got. So, [Counsel] we'll hold the record open 21 days for additional records from the neurologist here in Rolla.

*Id.* A discussion again ensued between the ALJ, counsel, and Benoit regarding whether the

neurologist's treatment notes were in the record. (Tr. 70-71.) The ALJ remarked that the neurologist's records "would be very helpful," and again instructed counsel to submit them after the hearing. (Tr. 71.)

When the ALJ issued his decision on September 6, 2016—approximately sixty days after the hearing—Benoit had not submitted any additional evidence.

In evaluating Benoit's tremors at step two, the ALJ acknowledged that "essential tremor" of the upper extremities was assessed by Benoit's family physician, David Myers, D.O. (Tr. 26, 381.) He stated that Benoit first reported tremors during an appointment scheduled to discuss disability paperwork on August 18, 2015, well after his alleged onset of disability date. *Id.*

Dr. Myers' handwritten treatment notes lack detail and are difficult to read. The undersigned's review of these records reveals that Dr. Myers first noted Benoit's complaints of "hand tremors" on April 17, 2015. (Tr. 382.) At that time, Dr. Myers indicated that he had discussed seeing a neurologist with Benoit. *Id.* Although it is difficult to read, Dr. Myers made reference to tremors--"Tremor of UE"--at Benoit's next visit in June 2015. *Id.* On August 18, 2015, Dr. Myers indicated that Benoit had seen Dr. Makos (the neurologist), and had been started on a new medication. *Id.* The fact the ALJ did not recognize the reference to Dr. Makos as being the neurologist and related to the tremor complaint is not surprising as neither the claimant nor his attorney could recall the neurologist's last name during the administrative hearing. (Tr. 48.) It is not clear whether Benoit discussed the disability process at that time. On September 1, 2015, Dr. Myers stated that Benoit presented to "review paperwork and discuss," and that he had brought "disability paperwork to [be] completed." (Tr. 382.) Dr. Myers assessed "essential tremor" at that time; again this handwritten entry by Dr. Myers is difficult to decipher. *Id.* There is no other reference to Benoit's tremors in Dr. Myers' subsequent treatment notes.

Notwithstanding the slight discrepancy of the treatment note dates, the ALJ's finding that Dr. Myers first reported tremors well after his alleged onset of disability date is accurate. Dr. Myers' treatment notes also support that he diagnosed "essential tremor" for the first time at a visit scheduled by Benoit for the purpose of completing disability paperwork.

In a letter dated March 31, 2016, Dr. Myers included "essential tremor" in his listing of Benoit's impairments for which he was treating him. (Tr. 529.) Dr. Myers stated that "each disease process individually can present disabling effects, in combination total disability is achieved." *Id.* With regard to the tremor, Dr. Myers stated that "it is impossible for someone with an essential tremor to control the shaking of their limbs and it can become more noticeable and violent the more the person tries to control it." He concluded that Benoit was "completely and permanently disabled." *Id.* The ALJ acknowledged that Dr. Myers was Benoit's long-time treating family physician, but indicated that he was assigning "little weight" to his opinion, as it was unsupported by the sparse findings in the record, including his own treatment notes. (Tr. 31.)

When assessing Benoit's allegation of severe tremors, the ALJ also discussed the other medical evidence of record, and stated that no other physician observed Benoit's tremors. (Tr. 26.) For example, he noted that Benoit presented to Stephen Williamson, M.D., for a consultative examination at the request of the Commissioner on June 7, 2014, and that Dr. Williamson found no tremors on examination. (Tr. 26, 371-76.) The ALJ next stated that Benoit saw VA physician Jihad Yousef Ibrahim, M.D., for a new patient examination on November 20, 2015, at which time Benoit's neurological examination was found to be completely normal. (Tr. 26, 480.) Benoit did not complain of tremor, nor did he report "seizures, focal neurologic deficit or paresthesias." (Tr. 480.)

Later in his opinion, when assessing the credibility of Benoit's subjective complaints of

disabling tremors, the ALJ noted that Benoit "has not seen a neurologist despite his allegation of trembling that is, on bad days, so severe that he cannot hold a drinking glass." (Tr. 28.) The ALJ again mentioned Dr. Ibrahim's finding that no tremors were observed; as well as the fact that Benoit failed to report the tremors to a physician other than Dr. Myers, in connection with his application for benefits. *Id.*

The ALJ's determination that Benoit's tremors were not severe is supported by substantial evidence. Notably, Benoit did not allege the tremors in his application for benefits and did not report them to a physician until April 2015—over a year after his alleged onset of disability. Even after this time, Benoit did not report the tremors on a consistent basis. The medical evidence before the ALJ does not establish the presence of an impairment that significantly limits Benoit's ability to perform basic work activities.

After the ALJ issued his decision, Benoit submitted additional evidence, including a June 18, 2015 treatment note from Dr. Makos, to the Appeals Council. (Doc. 15-1.) The Appeals Council denied Benoit's request for review, finding that the evidence submitted "does not show a reasonable probability that it would change the outcome of the decision." (Tr. 5.) The Appeals Council stated "[w]e did not consider and exhibit this evidence." *Id.*

Benoit requested that the Appeals Council reopen and change its decision due to the new medical evidence "which were never exhibited and therefore not considered" in the Appeals Council's decision. (Tr. 2.) On September 29, 2017, the Appeals Council denied Benoit's request for reopening. (Tr. 3.) The Appeals Council explained that it had reviewed the evidence submitted from Dr. Makos, but "found it did not show a reasonable probability that it would change the outcome of the decision. Therefore, we did not consider and exhibit this evidence." *Id.*

Courts may remand a case for review of additional evidence only where the new evidence is material and the plaintiff shows good cause for failing to incorporate the evidence into the record of the prior proceeding. *Hepp v. Astrue*, 511 F.3d 798, 808 (8th Cir. 2008) (internal quotation omitted) (citing 42 U.S.C. § 405(g)). To be considered material, "new evidence must be 'relevant, and probative of the claimant's condition for the time period for which benefits were denied.'" *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) (quoting *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997)). Further, there must be a reasonable likelihood that the evidence would have changed the determination. *Woolf v. Shalala*, 3 F.3d 1210, 1215 (8th Cir. 1993).

Although the Appeals Council denied Benoit's request for review and indicated that it did not consider or exhibit the evidence, the Appeals Council's decision reflects that the Appeals Council received the additional records; that it reviewed these records; and that it concluded that these records did not provide a basis for changing the decision of the ALJ. *Cf. Lamp v. Astrue,* 531 F.3d 629, 632-33 (8th Cir. 2008) (remanding case in which it could not be discerned whether the Appeals Council considered only one letter in a particular exhibit or two).

The new evidence relevant to this action consists of a four-page treatment note of Dr. Makos dated June 18, 2015, which Benoit has attached to his Brief. (Doc. 15-1.) Benoit presented on that date with complaints of tremors of the upper extremities, with occasional numbness and tingling in the upper extremities. *Id.* at 1. He reported that the tremors "have been going on for years but they are getting worse," resulting in the occasional loss of hand grip affecting each hand at variable times. *Id.* Benoit specifically stated that the tremors were present by at least age forty, but he feels he has always had them. *Id.* Benoit stated that he decided to make the appointment with Dr. Makos after dropping a cup of tea several months ago. *Id.* Benoit "recognized that he needed to get the tremors evaluated but notes that there are good days

and bad days." *Id.* Upon examination, Dr. Makos noted "postural tremor present bilaterally." *Id.* at 3. Dr. Makos diagnosed Benoit with essential tremor and started him on Mysoline.[2] *Id.* at 4. She instructed Benoit to contact the clinic if he was unable to tolerate the medication. *Id.*

In this case, as discussed above, the ALJ took great pains to point out to Benoit and his counsel at the hearing that Dr. Makos' treatment notes were missing from the record. Notably, the ALJ suggested that additional records were necessary despite Benoit's counsel's representation at the outset of the hearing that the record was complete. (Tr. 41.) The ALJ emphasized the importance of supporting Benoit's allegations of severe tremors with documentation of tremors on examination by a physician, and repeatedly instructed counsel to submit additional evidence. The ALJ gave Benoit twenty-one days to submit additional evidence. Despite the ALJ's efforts to ensure the record was complete, neither Benoit nor his counsel submitted the requested evidence in the sixty-day period from the conclusion of the hearing to the issuance of the ALJ's decision.

Benoit now attacks the ALJ's statement that Benoit had not seen a neurologist as inaccurate. Although the ALJ's statement is technically incorrect, it was correct to the best of the ALJ's knowledge at the time he rendered his decision. Benoit cannot claim reversible error for the ALJ's failure to acknowledge medical evidence that was not before the ALJ for the sole reason that it was not provided by Benoit.

More importantly, Benoit makes no attempt to demonstrate "good cause" for his failure to submit the records to the ALJ. Without a showing of "good cause," remand is not appropriate. *Krogmeier,* 294 F.3d at 1024; *Stephens v. Shalala,* 50 F.3d 538, 541 (8th Cir. 1995) ("new evidence not considered by the Appeals Council will be considered by the reviewing court only

---

[2]Mysoline is an anticonvulsant indicated for the treatment of seizures. *See* WebMD, http://www.webmd.com/drugs (last visited September 19, 2018).

upon a showing of materiality and good cause for not incorporating it in the earlier proceedings."). Good cause does not exist when the claimant had the opportunity to obtain the new evidence before the administrative record closed but failed to do so without providing a sufficient explanation. *See Hinchey v. Shalala,* 29 F.3d 428, 433 (8th Cir. 1994).

In *Hinchey,* the ALJ held the administrative record open to allow plaintiff to submit additional medical records and to allow a treating physician to clarify several statements. 29 F.3d at 433. In affirming the District Court's determination that plaintiff had not satisfied the good cause requirement, the Eighth Circuit held that when a party fails to submit additional evidence within the period during which the record was held open, the Court "need not determine whether the evidence was material." *Id.* Similarly, in *Hepp*, the Eighth Circuit relied on *Hinchey* to hold that the District Court was justified in declining to evaluate the materiality of new evidence that was submitted after the hearing because plaintiff failed to explain why the information was not obtained prior to the closing of the administrative record. 511 F.3d at 808. The Eighth Circuit further held that because the report in question was issued four years after plaintiff's last date of coverage, the report was "not relevant to [plaintiff's] condition during the period which benefits were denied." *Id.*

The Appeals Council cited the "good cause" requirement in its decision denying review and subsequent decision denying Benoit's request to reopen. (Tr. 2-3, 5.) The relevant regulations provide the following examples of "good cause": "(1) Our action misled you; (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier." 20 C.F.R. § 404.970(b).

Because Benoit failed to establish good cause, the Court need not determine the materiality of Dr. Makos' treatment notes. Even so, the Court notes that the records submitted from a single visit—the only time Dr. Makos saw Benoit—do not support a different outcome. Although Dr. Makos' notes may show Benoit's tremors are a medically determinable impairment, nothing in the records suggest the tremors were severe. The ALJ's statements that Benoit did not complain of the tremors until well after his alleged onset of disability, and that multiple physicians did not observe the tremors on examination during the relevant period remain true.

In sum, the ALJ adequately analyzed Benoit's tremors at step two. The sequential evaluation process ends at step two if the impairment has no more than a minimal effect on the claimant's ability to work. *Kirby,* 500 F.3d at 707; *Hudson v. Bowen,* 870 F.2d 1392, 1396 (8th Cir. 1989). Benoit fails to allege good cause for his failure to incorporate the records of Dr. Makos in the earlier proceedings. These records do not, therefore, constitute new evidence that warrants remand. Benoit does not challenge the ALJ's findings with regard to any of his other impairments. Thus, the ALJ's decision finding Benoit not disabled is supported by substantial evidence in the record as a whole.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of September, 2018.